**STATE of Missouri, Respondent,**

**v.**

**Troy SHUMATE, Jr., Appellant.**

**No. 56673.**

Supreme Court of Missouri,
Division No. 2.

April 10, 1972.

John C. Danforth, Atty. Gen., Jefferson City, E. Thomas Coleman, Jr., Asst. Atty. Gen., Kansas City, for respondent.

John J. Cosgrove, Legal Aid and Defender Society of Greater Kansas City, Kansas City, for appellant; Paul T. Miller, Executive Director, Willard B. Bunch, Chief Defender, Kansas City, of counsel.

HOUSER, Commissioner.

Troy Shumate, Jr., charged with rape, waived a jury and was tried before Honorable J. Donald Murphy, Judge of the Circuit Court of Jackson County. The court, hearing the evidence without the aid of a jury, found defendant guilty, sentenced him to 20 years' imprisonment, and he has appealed.

Prosecutrix, a white female aged 23 years, testified that she was forced to enter an automobile driven by appellant, a 23-year-old Negro male, in which car three other young Negro males were passengers; that over a period of several hours and at three different places in Kansas City she was forced, against her will, and through fear of her life, to submit to numerous rapes by appellant and his associates, in the course of which she was also forced to submit to oral copulation upon appellant and upon each of his associates.

Appellant's first point is that the court erred in receiving evidence that appellant committed the abominable crime against nature as defined in § 563.230, RSMo 1969, V.A.M.S., when he was not charged with that crime. Appellant's second point is that the court erred in allowing the prosecutrix to testify that she was raped by appellant's associates and forced by them to commit oral copulation upon them. In his reply brief appellant retracts his original assignment insofar as the rapes said to have been committed by appellant's associates are concerned and limits his argument to the reception of evidence of the crime against nature committed by appellant's associates. Appellant's first and second points are so closely related that we will consider them together.

First, appellant takes the position that the court found him guilty of the abominable crime against nature as well as rape; that he was not charged with the former crime and cannot be convicted of a crime with which he has not been charged. The record does not substantiate this argument. In its findings of fact the court found that by force and against the will of prosecutrix appellant raped her "and that there were also acts of oral copulation committed by defendant against the will" of the victim, but the finding on the question of guilt was a finding that appellant was "guilty as charged in the information." The judgment recited a finding of guilty of rape. The sentence was "for said offense of Rape." Appellant was not convicted of the abominable crime against nature. He was convicted only of the crime with which he was charged, namely, rape.

Next, appellant argues that he was deprived of due process of law as guaranteed by the Fifth Amendment to the Constitution of the United States by the action of the court in admitting evidence that defendant committed separate and distinct crimes with which he was not charged. In support of this argument appellant cites State v. Spinks, 344 Mo. 105, 125 S.W.2d 60, and five Missouri cases cited on page 64 of that opinion. Neither the Spinks case nor any of the cases cited therein is pertinent to the inquiry. They all involve the admission of evidence of other crimes having no connection with the offense

charged; crimes against other victims, at other times, or not associated with the crime for which the accused was on trial.

We recognize the general rule that evidence of different crimes is inadmissible. State v. Scown, Mo., 312 S.W.2d 782; State v. Reese, 364 Mo. 1221, 274 S.W.2d 304; State v. Smith, Mo., 431 S.W.2d 74, 79 [10]. The unusual facts of this case, however, bring it within well-recognized exceptions to the general rule. "Where the proof of other offenses may tend to establish motive, or intent, or absence of accident or mistake, or identity of the defendant, or a common scheme or plan embracing the commission of separate similar offenses so interrelated to each other that proof of one tends to establish the other, such other offenses are widely held under these circumstances to be admissible in proof." State v. Kornegger, 363 Mo. 968, 255 S.W.2d 765, 768. Thus, in State v. Smith, supra, evidence that defendant, charged with knowingly transporting a female through the state for the purpose of prostitution, transported the prosecuting witness regularly (almost every day) to various places for purposes of prostitution, was held admissible under the exception as part of a common scheme or plan embracing the commission of separate similar offenses.

In this case prosecutrix testified as follows: Appellant and the three men first took her to a vacant house in the area of 33rd and Euclid. Once inside the house she was required to take off her clothes and all four, including appellant, raped her. She was then taken into a bedroom of the house, where she was raped by two of the men. She was then raped in a closet in the front part of that house by one of the men. She was then taken into the back room, where she was again raped by and forced to commit the abnormal act of oral copulation upon appellant. Then the men took the prosecutrix to another house on the porch of which she was raped by three of the men, and again forced to commit an abnormal act upon appellant,

who raped her twice on the porch. Then appellant and a "tall Negro man" drove the prosecutrix to a hotel at 30th and Prospect. There she was taken upstairs to a room, ordered by defendant to disrobe and get in bed, where over a period of eight hours appellant raped her repeatedly, and twice forced her to commit acts of oral copulation. Prosecutrix testified that five or ten minutes after entering the automobile when first abducted she was blindfolded and that except for that five or ten-minute period and except for the trip through the lobby of the hotel, she was continually blindfolded. These facts reveal that prosecutrix was the victim of a common plan or scheme of a continuing nature involving sexual excesses committed by several persons at different places over a considerable period of time. The whole transaction is viewed as one. The common plan or scheme embraced the commission of similar sex offenses (copulation), and the separate acts of appellant are considered as parts of the res gestae of the crime charged. In such case "the state is not required to nicely sift and separate the evidence and exclude the testimony, tending to prove the crime for which (the accused) is not on trial, when it forms a part of the res gestae of the crime charged." State v. Sinovich, 329 Mo. 909, 46 S.W.2d 877 [10, 11]; State v. Robb, Mo., 439 S.W.2d 510 [7].

In State v. Ward, Mo., 457 S.W.2d 701, a prosecution for robbery, appellant Ward complained of the admission in evidence of the testimony of the victim concerning the treatment received by her at the hands of Ward's accomplice. Holding that "All of the substantially simultaneous acts become part of the res gestae," the Court at page 708 cited and quoted this pertinent language from State v. Parr, 296 Mo. 406, 246 S.W. 903, 905: " '* * * Where, as here, two crimes are committed under such circumstances as to constitute one continuous transaction in the accomplishment of a common design, and the facts are so interrelated that the crimes are concurrent,

proof of one cannot be made without a showing of the facts tending to establish the other. In short, the entire otherwise relevant facts may be regarded as part of the res gestae. State v. Sykes, 191 Mo. 62, 89 S.W. 851; State v. Katz, 266 Mo. 493 loc. cit. 503, 181 S.W. 425. Without their admission, a connected and intelligible statement of the transaction could not well be made nor a clear understanding had of the same. * * *' " This is particularly pertinent in view of the testimony that prosecutrix was blindfolded throughout most of the time in question. State v. Katz, supra, admirably illustrates the exception to the general rule. Katz and two companions assaulted prosecutrix and her escort, raped prosecutrix several times each and required her to commit the abominable crime against nature upon them. The Court found the evidence sufficient to establish a conspiracy on the part of defendant and his two companions and that "all that was done, both at the park and the brewery, was but parts of a fixed, single and common design. It was one continuous transaction, and from the moment that prosecutrix was seized by defendant and her companion taken away by his confederates the girl was within the power and control of defendant, and he was continuously using her in the accomplishment of a single design. These various acts were committed, one after the other, in almost immediate succession, and, no doubt, in pursuance of a common scheme and understanding on the part of defendant and his accomplices. It is our opinion that they were so closely connected and committed under such circumstances as to make evidence of the whole transaction competent, * * *." 181 S.W., l.c. 427. See also State v. Warren, Mo., 366 S.W.2d 311, 313 [3], and State v. Taylor, 320 Mo. 417, 8 S.W.2d 29, 35 [12]: "It was proper, also, to admit the testimony of the prosecutrix relating to the acts of sodomy committed by the defendant and Gentry. These acts, though constituting another crime, were committed at the same time and place as the sexual acts in question, and were

therefore clearly admissible as a part of the res gestae. State v. Harrison, 263 Mo. 642, 174 S.W. 57."

■ The court did not err in admitting the testimony of the several rapes by the several persons involved, or in admitting the evidence of the acts of sodomy committed by appellant and by his associates.

Appellant's third point: Error in violation of his constitutional rights in refusing to suppress prosecutrix' in-court identification of appellant because it was tainted by pretrial displays of appellant in person and by photographs of appellant without his counsel being present. Appellant does not specify in what way the in-court identification was tainted, and makes no specific complaint about the manner in which the two lineups were conducted, except that appellant did not have counsel, did not sign a waiver of his right to counsel, and that "there were irregularities in the lineup." The police showed prosecutrix 200 photographs, from which she selected Exhibit No. 1 (appellant's photograph). Although appellant relates that he was not represented by counsel when the photographs were shown to prosecutrix, he concedes that "The exhibition of this photograph was not error." Prosecutrix testified that her in-court identification was based upon what she saw of appellant on the night of the rapes; that the dome light of the automobile was on when she first got into the automobile and that she *looked at him* for "maybe five minutes or ten"; that she saw appellant while they were in bed at the hotel; that her in-court identification of appellant as the man who raped her several times was based upon what she saw of him on the evening in question and not upon seeing him in the lineups or upon viewing his photograph. There was therefore an independent basis for the in-court identification, *regardless of the constitutional propriety of the lineups.* State v. Brownridge, Mo., 459 S.W.2d 317, 320–321 [9].

Judgment affirmed.

STOCKARD, C., concurs.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the Court.

All of the Judges concur.