**William D. THOMPSON, M.D. Appellant,**

v.

**STATE BOARD OF REGISTRATION FOR the HEALING ARTS, Respondent.**

**No. ED 89649.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 27, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 16, 2008.

William D. Thompson, St. Charles, MO, pro se.

Jeremiah W. (Jay) Nixon, Atty. Gen., William E. Roberts, Jefferson City, MO, for respondent.

CLIFFORD H. AHRENS, Judge.

William D. Thompson, M.D., ("Physician") appeals from the judgment of the circuit court affirming the decision of the Administrative Hearing Commission ("AHC") and the Missouri State Board of Registration for the Healing Arts ("Board"), which reprimanded him publicly and restricted his ability to order prescriptions, specifically preventing him from prescribing medication over the Internet. Physician contends that the decision of the AHC was arbitrary and capricious, and that the decision of the circuit court violated his right to due process under the 14th Amendment to the U.S. Constitution. Finding no error, we affirm.

In 2000, Physician, a doctor licensed by the State of Missouri, began providing consulting and prescribing services for the owners/operators of a website called "www.ePrescribe.com." On November 6, 2000, an undercover agent for the Connecticut Department of Consumer Protection sought to obtain a prescription through ePrescribe using the alias of "Kim Davis." "Kim Davis" tried to obtain a prescription for Meridia, a Schedule IV controlled substance used for weight loss. "Kim Davis" filled out the online questionnaire, which included questions about weight and height. The agent listed a height of 5 feet 7 inches and a weight of 130 pounds, which yields a Body Mass Index ("BMI") of 20.4.[1] A BMI over 25 is considered overweight. The FDA has approved Meridia for use by persons with a BMI of 30 or greater, or for those with a BMI of 27 or higher who show at least two risk factors that indicate that weight loss is imperative. Physician reviewed the information provided by the agent, and declined to issue a prescription for Meridia based on the BMI submitted by the agent. "Kim Davis" thereafter received an e-mail, which indicated that the request was denied because the BMI submitted was too low to justify a prescription for Meridia.

Approximately one month later, on December 14, 2000, "Kim Davis" again tried to obtain a prescription for Meridia through ePrescribe. The agent used a different email address, and submitted different weight and height information on the online "consultation" form, stating that "Kim Davis" was 5 feet 5 inches tall and 150 pounds, which yields a BMI of 25. Other than these changes to email address and height and weight, all of the information supplied by the agent on December 14, 2000, was the same as that previously submitted in November. Physician reviewed the "consultation" form submitted in December, and based on this information issued a prescription for Meridia to "Kim Davis." Physician did not examine "Kim Davis" or otherwise confirm the information provided in the online "consultation" form. The agent thereafter obtained 30 10–milligram tablets of Meridia from a pharmacy based in Alabama, which was shipped to the agent's address in Connecticut.

In January 2002, the Board met with Physician to discuss his Internet prescribing activities. At all relevant times there were no statutes or regulations that specifically addressed prescribing medication

---

1. BMI is calculated by dividing weight in pounds by the square of height in inches and then multiplying that result by 703.

over the Internet. On April 4, 2002, the Board filed a complaint against Physician with the Administrative Hearing Commission ("AHC") seeking a determination that cause existed to discipline Physician. The AHC held a hearing in March 2003, at which the parties stipulated that Physician prescribed Meridia to "Kim Davis" based on the agent's "consultation" form submitted in December 2000.

The Board presented evidence at this hearing about the risks of prescribing Meridia without a sufficient examination, and the need to assess a patient for various risks before prescribing this drug. Physician testified on his own behalf and his use of his professional judgment. Physician had never prescribed Meridia prior to becoming a consulting and prescribing doctor for ePrescribe. The AHC issued a decision on June 9, 2004, and found that Physician's medical license in Missouri was subject to discipline for prescribing a controlled substance without a sufficient medical examination in violation of section 334.100.2(4)(h).[2] It found that he was not subject to discipline for prescribing a medication outside of the manufacturer's recommended guidelines or for conduct that might be harmful or dangerous to the public health or for incompetency. Physician had ceased his Internet practice in December 2003.

The Board held a disciplinary hearing on October 15, 2004, at which evidence was presented and Physician again testified. The Board issued findings of fact and conclusions of law on October 19, 2004, and in its order publicly reprimanded Physician's license and restricted it by prohibiting him from prescribing over the Internet. No other action was taken by the Board.

Physician timely filed a petition for judicial review in the Circuit Court of St. Charles County. The circuit court held a hearing on April 10, 2006. Apparently through an oversight, the Board failed to certify the full record of the proceedings before it to the circuit court, though the record provided clearly indicated that there were multiple volumes. On April 12, 2006, the circuit court issued an order and judgment in favor of Physician, directing the Board to rescind its disciplinary order against him. The Board appealed the circuit court's decision. During the course of this appeal, *State Board of Registration For The Healing Arts v. William D. Thompson, M.D.*, ED88103, 2006 WL 2787129, the Board filed a motion to supplement the record on appeal with the material that had been filed with the circuit court. This Court reversed the judgment of the circuit court and remanded for a review based on the entire record that had been before the Board. On remand, the circuit court affirmed the order of the Board. Physician now appeals from this order.

We note initially that Physician's brief is deficient in multiple respects. While we are mindful of the challenges that face a *pro se* appellant, nevertheless *pro se* appellants are held to the same standards as licensed attorneys, and must comply with the rules of appellate procedure. *Blakey v. AAA Professional Pest Control*, 219 S.W.3d 792, 794 (Mo.App. 2007). Failure to adhere to the rules of appellate procedure constitutes grounds for dismissal. *Id.* However, we can discern the gist of Physician's points relied on and arguments, and will proceed to review his claims, *ex gratia*.

In his first point relied on, Physician contends that the Board erred in disciplining his license because its action was arbitrary and capricious in that it knew of the

---

**2.** Unless noted otherwise, all further statutory citations are to RSMo 2000.

nature of his medical practice "for a substantial time and offered no warning to [him] that he should stop or limit his medical practice." He avers that the circuit court's judgment of April 12, 2006, was correct and should be upheld. He further asserts that the Board "had no clear guidelines as to Internet Prescribing or distinguish such prescribing from other current practices such as on-call over the telephone, nor did it provide any warning to [him] that his medical practice would lead to subsequent disciplinary action."

■ We first note that for purposes of judicial review, the decision of the AHC and the Board's disciplinary order are treated as one decision and as the final decision of the AHC subject to review. *Perez v. Missouri State Board of Registration for the Healing Arts,* 803 S.W.2d 160, 162 (Mo.App.1991). This Court reviews the decision of the administrative agency, and not the judgment of the circuit court to determine if the agency action: (1) is in violation of constitutional provisions; (2) is in excess of the jurisdiction or statutory authority of the agency; (3) is not supported by competent and substantial evidence based on the whole record; (4) is, for any other reason, not authorized by law; (5) is made upon unlawful procedure or without a fair trial; (6) is arbitrary, capricious, or unreasonable; or (7) involves an abuse of discretion. Section 536.140.2; section 621.145; *State Board of Registration for the Healing Arts v. McDonagh,* 123 S.W.3d 146, 152 (Mo. banc 2003). We must consider the evidence and view all reasonable inferences in the light most favorable to the findings and decision of the agency. *See Dorman v. State Board of Registration for the Healing Arts,* 62 S.W.3d 446, 448 (Mo.App.2001). There is a strong presumption of validity in favor of the decision of the administrative agency, which can only be overcome by clear and convincing evidence that the decision was arbitrary, capricious, unreasonable, or an abuse of discretion. *Hellmann v. Union School District,* 170 S.W.3d 52, 59 (Mo. App.2005). If evidence before the agency would support either of two opposed findings, this Court is bound by the administrative determination, and it is irrelevant that there is evidence that would support a contrary finding. *Loeffelman v. Board of Education of Crystal City School District,* 134 S.W.3d 637, 643 (Mo.App.2004). This Court also defers to the administrative agency's determination of the credibility of the witnesses. *Id.*

It would appear that Physician's complaint is, in part, that he was not disciplined earlier, but rather allowed to continue to prescribe medication over the Internet even after the Board was aware of his activities. We note that Physician was not disciplined for having a practice that involved prescribing over the Internet, but rather for a specific act, namely prescribing Meridia to the undercover agent "Kim Davis" without performing a sufficient examination. We also note that the Board first filed a complaint against Physician's license in April 2002, only several months after it first discussed his practice of Internet prescribing, which is well within the statute of limitations. To the extent that Physician argues that the Board and AHC erred because they "allowed" him to continue to prescribe over the Internet, his point is without merit.

Missouri has no statutes or regulations that specifically address the practice of medicine over the Internet and prescribing substances online. The lack of statutes or regulations expressly pertaining to the Internet does not mean that the particular conduct at issue, namely prescribing a medication without sufficient examination, was not controlled by legislation and regulation that applied to the practice of medi-

cine in general. Section 334.100.2(4)(h) provides that the Board may file a complaint with the AHC for:

> Signing a blank prescription form; or **dispensing, prescribing, administering or otherwise distributing any drug, controlled substance or other treatment without sufficient examination,** or for other than medically accepted therapeutic or experimental or investigative purposes duly authorized by a state or federal agency, or not in the course of professional practice, or not in good faith to relieve pain and suffering, or not to cure an ailment, physical infirmity or disease, except as authorized in section 334.104;

(Emphasis added). This statute was in force when Physician prescribed Meridia to "Kim Davis."

 Physician appears to be arguing that this statutory basis for disciplinary action is unconstitutionally vague. We disagree. Statutes are presumed to be constitutional, and will be held unconstitutional only if they clearly violate some constitutional provision. *Perez,* 803 S.W.2d at 165. Any doubts are resolved in favor of the validity of a statute. *Id.* Due process mandates that a statute prohibiting certain activity furnish 1) reasonable notice of the proscribed activity and 2) guidelines so that the governmental entity charged with enforcing the statute may do so in a nondiscriminatory, nonarbitrary fashion. *Id.* Where the challenge to a statute is that it is unconstitutionally vague, the language is to be treated by application of it to the facts of the specific case. *Id.* "[N]either absolute certainty nor impossible standards of specificity are required in determining whether terms are impermissibly vague." *Cocktail Fortune, Inc. v. Supervisor of Liquor Control,* 994 S.W.2d 955, 957 (Mo. banc 1999).

 The statute at issue is a disciplinary statute that has the protection of the public as its purpose, and as such, it is remedial rather than penal. *See Perez,* 803 S.W.2d at 165. We construe remedial statutes to meet the cases that are clearly within the reason or spirit of the law, or within the evil that the statute was designed to remedy, provided that such interpretation is consistent with the language used with all reasonable doubts resolved in favor of the applicability of the statute to the particular case. *Id.* Courts use " 'greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe.' " *Cocktail Fortune,* 994 S.W.2d at 957–59 (quoting *State ex rel. Nixon v. Telco Directory Pub.,* 863 S.W.2d 596, 600 (Mo. banc 1993)).

 The language of section 334.100.2(4)(h) was sufficient to put Physician on notice. It would be very difficult to state a general rule or principle about what constitutes a "sufficient examination" that would be a valid basis for a doctor to prescribe a medication or treatment in all cases. What would constitute a "sufficient examination" for medical practice is inevitably a fact specific question. There are simply too many vastly different medications, treatments, and ailments to craft a general rule, ranging from over-the-counter drugs to Schedule I controlled substances, from the common cold to rare neurological conditions. Physician stipulated that he prescribed Meridia, a controlled substance, to "Kim Davis" based on a "consultation" questionnaire without physically examining the "patient." The AHC found that the on-line "consultation" filled out by "Kim Davis" on December 14, 2000, and reviewed by Physician did not constitute a "sufficient examination" for a doctor to prescribe or dispense Meridia, a

Schedule IV controlled substance for weight-loss that could pose health risks to patients. There was substantial and competent evidence to support the AHC's conclusion, and neither the AHC's finding that cause existed to discipline Physician's license, nor the disciplinary action taken by the Board were arbitrary, capricious, or unreasonable. Section 334.100.2(4)(h) was not applied in a discriminatory or arbitrary fashion.

Physician argued at the hearings, and before this Court, that his prescribing of Meridia over the Internet after reviewing the "consultation" questionnaire is comparable to on-call physicians who prescribe medication after a telephone call from a patient without performing a physical examination. While there are similarities, there are also significant differences. The AHC made the following findings and conclusions:

> [Physician] compared his practice to that of on-call physicians who often prescribe medication without performing a physical examination but who have enough information to do so. [Physician] argues that he met the guidelines in effect at the time for prescribing a controlled substance. Hubbard [an expert witness for the Board] admitted that these guidelines did not require a face-to-face examination but the Board argues that the examination could not have been sufficient for prescribing Meridia without one. The Board also makes a distinction between [Physician]'s actions and that of the on-call doctor in that the on-call doctor knows that the patient has a doctor and knows the identity of that doctor. The Board argues that the on-call doctor is merely filling in for the patient's doctor.

Considering all of the circumstances of this case and the arguments presented, we determine that [Physician] did not perform a sufficient examination before prescribing Meridia, a controlled substance. This decision does not limit the concept of a sufficient examination to a face-to-face contact in every situation. However, we believe that the word "examination" in the context of section 334.100.2(4)(h) requires more than a questionnaire. Whether the doctor is seeing or otherwise examining the patient through the use of video conferencing or is otherwise examining the patient by touch, there must be some examination. Thompson did no examination of Kim Davis. This is particularly important in the case of a controlled substance that, despite [Physician]'s attempts to counter the Board's arguments, we believe has some potential for abuse.

[Physician] attempts to justify the lack of examination by asking the patient to state his or her blood pressure and by requiring the patient to affirm that he or she has had a recent physical examination by a physician and has a doctor available for any necessary follow-up or intervention. However, [Physician]'s reliance on this other doctor is not sufficient because he does not ask the name of this doctor or the date of the physical examination upon which he relies. He could not access the patient's information if it became necessary. We cannot find that this is sufficient for prescribing a medication such as Meridia that has cholesterol and cardiovascular risk factors.

These findings are not arbitrary, capricious, or unreasonable.

As to Physician's argument that the April 12, 2006 judgment of the circuit court was correct, we observe that judgment was reversed and remanded by this Court in *State Board of Registration For The Healing Arts v. William D. Thompson, M.D.,*

ED88103, for a review by the circuit court based on the entire record, and the judgment of April 12, 2006 has no binding legal effect. Point denied.

In his second point relied on, Physician argues that the circuit court's judgment of March 20, 2007 is a violation of his rights to due process under the U.S. Constitution and that he "should not have been subjected to a repeat trial in the Circuit Court, which allows the State repeated attempts to gain a favorable decision."

The circuit court's judgment of the March 20, 2007, contrary to Physician's contention, did not reverse the April 12, 2006 judgment that had been in his favor. This Court reversed and remanded because the complete transcript of the proceedings and evidence before the AHC and Board had not been certified and sent to the circuit court as required by section 536.130.1(3). In our order reversing and remanding the April 12, 2006 judgment, we cited *Parker v. City of Kirkwood*, 605 S.W.2d 210 (Mo.App.1980), a case which involved a similar statutory requirement that an administrative agency certify and send to the circuit court the entire record for judicial review. This Court directed the circuit court to conduct a new review based on the entire record, but did not mandate what the results of that new review would be. That a circuit court decision favorable to a party was reversed and remanded, and the subsequent judgment after a new hearing was not in that party's favor is not a denial of due process. Point denied.

The decision of the AHC is affirmed.

ROY L. RICHTER, P.J., and GLENN A. NORTON, J., concurs.